**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VALESHIEA L. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-CV-04-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Valeshiea L. King, ("Plaintiff") appeals the decision of the Commissioner denying her a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff alleges that the ALJ erred by failing to include all of Plaintiff's mental limitations in the residual functional capacity ("RFC") assessment and finding Plaintiff able to return to her past work. For the reasons discussed below, the Court hereby affirms the Commissioner's decision.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on April 11, 1966, and was 40 years old at the time of the ALJ's decision. (*E.g.* R. 50, 147.) She completed high school , earning A and B grades without

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of Social Security, is substituted for Jo Anne B. Barnhart the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of § 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

taking special education classes.[3/] (R. 101, 159.) She then attended vocational school for computer training and also completed one year of college. (*Id.*) She has past relevant work as a data entry clerk, office clerk, administrative assistant, receptionist, and customer service clerk. (R. 61-62.) She alleges that she became disabled on May 1, 2002, due to depression and mild retardation. (R. 50, 90, 147). She was last insured for Title II benefits on June 30, 2003. (R. 53.)

Plaintiff filed her application for disability insurance and supplemental security income on May 6, 2004. (R. 50-52; 147-48.) After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing. Administrative Law Judge ("ALJ") Richard A. Say held the hearing on December 1, 2005 (*see* R. 155-77), and issued an unfavorable decision on May 12, 2006. (R. 11-18.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied her request on November 7, 2006. (R. 5-7.) Plaintiff now seeks judicial review.

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

---

[3/] She did, however, repeat ninth grade and was suspended once for skipping classes. (*Id.*)

42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy, . . . .

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).[4/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh

---

[4/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[5/] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff (1) met the insured status requirements of the Social Security Act through June 30, 2003; (2) had not engaged in substantial gainful activity at any time relevant to the decision; (3) had the following severe impairments: affective disorder and mild mental retardation; (4) did not have impairment or combination of

---

[5/] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) was capable of performing past relevant work as a data entry clerk, office clerk and receptionist; and (6) had not been under a "disability" as defined in the Social Security Act, from May 1, 2002 through the date of his decision. (R. 15-18.)

## IV.  REVIEW

**A.      Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ failed to include all of claimant's mental limitations in his RFC assessment, but the thrust of this argument is that the ALJ failed to properly evaluate her mental impairment. Plaintiff relies primarily on records from her four-day hospitalization in 2002 and her evaluation by a consultative psychologist in 2004.

As the ALJ set forth, Plaintiff was admitted to St. John Medical Center on May 26, 2002 for "detox treatment and depression symptoms." (R. 97.) At the time, she was using about $60.00 of crack cocaine and drinking two to three cans of beer daily. (*Id.*) She was also drinking whiskey once a month. (*Id.*) She reported that she had a history of depressive symptoms which worsened after her brother was shot to death the previous month. (*Id.*) The diagnostic impression was cocaine dependence, alcohol abuse, and depressive disorder not otherwise specified ("NOS"). (R. 98.) Before admission, she was assigned a Global Assessment of Functioning ("GAF") score of 35.

The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") (Text Revision 4th ed. 2000) at 32; *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006). A GAF level of

30-40 is defined as "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 32.

Plaintiff was initially placed on suicide precautions, but those were discontinued. (R. 95.) Upon discharge, she rated her mood as 7 out of 10, where 10 is happy and 1 is very depressed. (*Id.*) Her doctor rated her GAF at 50-55,[6/] prescribed medication, and noted that she was sleeping well. (R. 94-95.) Plaintiff was advised to follow up in an intensive outpatient program for drug and alcohol abuse. (R. 96.) Plaintiff testified that she saw a therapist for a year or a year-and-a-half afterwards. (R. 163.)

On July 19, 2004, Plaintiff saw Michael D. Morgan, Psy.D. Plaintiff focuses on the portions of Dr. Morgan's report which show that her mood and affect were consistent with depression, and she had anxiety symptoms resulting from the death of her brother. (R. 102.) Plaintiff also points out Dr. Morgan's prognosis that Plaintiff

> meets the criteria for depression but it is not possible to rule out substance abuse as being causal; therefore, depressive disorder not otherwise specified is an appropriate diagnosis. With complete abstinence from recreational drugs, and with psychotherapy and appropriate psychotropic medication, it is likely that she can achieve a more normal level of psychological functioning, in two to three years.

(R. 103.)

The ALJ focused on the following portions of Dr. Morgan's report. When Plaintiff was asked "What condition keeps you from working?" she stated, "I just don't want to do anything anymore. All I want to do is just drink and go to sleep." (R. 100.) When she was

---

[6/] A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." DSM-IV at 34.

asked "What finally made it impossible to work?" she said, "I've been on drugs and I've been suicidal." (*Id.*) Plaintiff reported that she had disturbed sleep, occasional nightmares, and low energy. (R. 101.) She said she felt sad most of the time. (R. 101.) On a more positive note, Plaintiff stated that she walked, watched television, and took care of her children in her leisure time. She claimed that she could perform all necessary household chores including cleaning, shopping, and cooking. She also claimed that she could manage her own financial matters. (*Id.*) Dr. Morgan's diagnostic impression of Plaintiff was post-traumatic stress disorder, chronic (primary); depressive disorder, not otherwise specified; alcohol dependence, with physiological dependence; and cocaine dependence, with physiological dependence. (R. 103.) He assigned Plaintiff a GAF score of 45-50.[7/] (*Id.*)

The Commissioner points out those portions of Dr. Morgan's report which indicate that Plaintiff had no serious impairment in orientation, normal speech, normal thought process with regard to productivity, and speech structure that was logical, coherent, goal-directed, and relevant. (R. 102.) She operated at an average intelligence level. (*Id.*) She also demonstrated good judgment and insight, and her ability to make work decisions appeared fairly intact. (R. 103.)

Plaintiff contends that the ALJ should have given Dr. Morgan's opinion, as well as the opinion of William Reid, M.D., the doctor who treated her for the brief time she was in the hospital in 2002, the weight afforded treating physicians' opinions under Social Security

---

[7/] A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation ...) OR any serious impairment in social, occupational, or school functioning (e.g., ... unable to keep a job);" DSM-IV at 34; *Langley v. Barnhart*, 373 F.3d 1116, 1123 n. 3 (10th Cir. 2004).

regulations and case law. "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The Tenth Circuit has emphasized that "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted).

Neither the opinion of Dr. Morgan nor the opinion of Dr. Reid is entitled to controlling weight under these regulations: Dr. Morgan was a consultative examiner --- not a treating physician, and Dr. Reid saw her only during the short four-day stay in the hospital. More significant, neither opinion necessarily leads to the conclusion that Plaintiff cannot work even if the opinions were entitled to controlling weight. In other words, neither opinion dictates a change in the ALJ's RFC assessment for Plaintiff. The ALJ found that Plaintiff had the mental residual functional capacity "to perform simple tasks, and occasionally more complex [tasks] with routine supervision. She is able to relate to others for work purposes and is able to adapt to work situations." (R. 17.) The ALJ discussed the medical record from Plaintiff's brief stay at St. John's Medical Center and the report of Dr. Morgan, as well as the report of Dr. Minor Gordon , Ph.D, who examined Plaintiff after her administrative hearing. (R. 15-16.)

The ALJ noted, in particular, Plaintiff's comments to Dr. Gordon that she was depressed and did not want to go out. (R. 143.) She also told Dr. Gordon about her brother's death and her fear of harm as well. She said that she tired easily, slept all the time, ate a lot, did not do anything, and liked to watch a detective show. She admitted to past drug and alcohol problems, but claimed that she stopped doing both at least a year prior to the examination. She stated that she did some cooking, but her mother did most of the cleaning and shopping. (*Id.*) Dr. Gordon administered a battery of tests, and Plaintiff earned a full scale IQ of 64, indicating a current level of intelligence in the mild range of mental retardation. (R. 145.) Dr. Gordon's diagnostic impressions were of adjustment disorder with depressed mood, mild, and mental retardation, mild. He assigned her a GAF of 65. (R. 146.) A GAF score of 65 falls within the middle of the range (61-70) indicating "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34. Dr. Gordon's assessment supports the ALJ's RFC assessment.

The ALJ's assessment is based, in part, on the Psychiatric Review Technique ("PRT") forms completed by agency psychologists. Plaintiff's contention that these forms "are internally inconsistent without explanation" lacks support. The PRT form dated July 29, 2004 indicates that claimant suffers from affective disorders and anxiety-related disorders, and that she has moderate limitations applicable to a restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (R. 105-115.) When the agency psychologist

completed the mental RFC form, she found that Plaintiff was moderately limited only in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. (R. 119.)  The same findings were made by a different agency psychologist on December 11, 2004.  (R. 123-39.)  The Court finds no inconsistency in these conclusions.  More important, the moderate limitations found by the agency psychologists do not warrant a finding of disability or an RFC assessment different from that found by the ALJ.

Plaintiff further argues that another inconsistency exists because the agency psychologists' conclusions that Plaintiff could retain and carry out simple and some more complex tasks with routine supervision (*see* R. 121, 139) differ from Dr. Gordon's comment that Plaintiff should be able to follow oral one and two-step instructions (*see* R. 145.)  The Court finds no inconsistency and, again, the "slight" and "moderate" limitations found by Dr. Gordon do not mandate a finding of disability at any step of the sequential evaluation process.  As the Commissioner points out, the form used by Dr. Gordon indicates that an "individual is still able to function satisfactorily" with a "moderate" limitation; and an "individual can generally function well" with "slight" limitations.  (R. 140.)  The ALJ did not fail to include all of Plaintiff's mental limitations in the residual functional capacity ("RFC") assessment or to properly evaluate them.[8]

---

[8] The ALJ's finding, pursuant to the five-step sequential evaluation process, that Plaintiff was not disabled precluded any analysis by the ALJ as to whether Plaintiff's drug addiction or alcoholism was a contributing factor material to the determination of disability.  *See Drapeau v. Massanari*, 255 F.3d 1211, 1214-1215 (10th Cir. 2001); 20 C.F.R. §§ 404.1535, 416.935.

**B.     Past Relevant Work**

Plaintiff's argument that the ALJ erred by finding Plaintiff able to return to her past work is largely based on Plaintiff's argument that the ALJ erred in his RFC analysis, and fails for similar reasons.  However, Plaintiff also asserts that the vocational expert testified that Plaintiff could not return to her work as an administrative assistant or as a customer service clerk if claimant required routine supervision (R. 173).  Plaintiff's assertion is correct, but does not account for the vocational expert's additional testimony, and the ALJ's finding, that Plaintiff could still return to her past relevant work as a data entry clerk, office clerk, and receptionist as these positions do not require routine supervision.  (*Id., see* R. 18.)  The ALJ properly found, at Step Four of the sequential evaluation process, that Plaintiff could return to at least three of her past relevant work positions.  *Cf. Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (describing the three phases of Step Four analysis).

## V. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows the correct legal principles and is supported by substantial evidence.  Accordingly, the Court affirms the Commissioner's decision.

It is so ordered this 20th day of February, 2008.

Sam A. Joyner
United States Magistrate Judge